IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

| | | |
|---|---|---|
| IN RE MENTOR CORP. OBTAPE | * | MDL Docket No. 2004<br>4:08-MD-2004 (CDL) |
| TRANSOBTURATOR SLING PRODUCTS | * | Case Nos. |
| LIABILITY LITIGATION | * | 4:13-cv-135 (Bergin)<br>4:13-cv-144 (Fudge) |
| | * | |

O R D E R

Defendant Mentor Worldwide LLC developed a suburethral sling product called ObTape Transobturator Tape, which was used to treat women with stress urinary incontinence. Plaintiffs Ann Marie Bergin and Wendy Fudge were implanted with ObTape and assert that they suffered injuries caused by ObTape. Plaintiffs brought product liability actions against Mentor, contending that ObTape had design and/or manufacturing defects that proximately caused their injuries. Plaintiffs also assert that Mentor did not adequately warn their physicians about the risks associated with ObTape. Mentor seeks summary judgment on Plaintiffs' claims, contending that they are time-barred under Texas law. For the reasons set forth below, Mentor's summary judgment motions (ECF No. 40 in 4:13-cv-135 and ECF No. 45 in 4:13-cv-144) are granted.

SUMMARY JUDGMENT STANDARD

Summary judgment may be granted only "if the movant shows that there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether a *genuine* dispute of *material* fact exists to defeat a motion for summary judgment, the evidence is viewed in the light most favorable to the party opposing summary judgment, drawing all justifiable inferences in the opposing party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A fact is *material* if it is relevant or necessary to the outcome of the suit. *Id.* at 248. A factual dispute is *genuine* if the evidence would allow a reasonable jury to return a verdict for the nonmoving party. *Id.*

FACTUAL BACKGROUND

**I. Ann Marie Bergin**

Dr. Keith Grisham diagnosed Ann Marie Bergin with stress urinary incontinence and other medical issues. On September 7, 2005, Dr. Grisham implanted Bergin with ObTape. In late December, Bergin noticed a vaginal opening with bleeding, and in March 2006 Dr. Grisham found that Bergin's sling was exposed. Dr. Grisham told Bergin that her sling was exposed and that one of her treatment options was to undergo a surgical excision procedure. Dr. Grisham surgically removed a piece of Bergin's exposed ObTape on March 22, 2006. Bergin continued to experience bloody discharge, as well as granulated tissue. Dr. Grisham surgically excised Bergin's granulated tissue, as well as some infected mesh, on September 13, 2006. Dr. Grisham told

Bergin that he found and removed infected mesh material during the procedure and that he expected her symptoms to improve. Bergin's bleeding and discharge symptoms did improve, although she continued to suffer other symptoms that she now attributes to ObTape. At the time of her excision procedures, Bergin knew that she had portions of her sling removed to treat her bleeding and discharge symptoms. Bergin Dep. 57:13-22, 58:14-18, ECF No. 40-4. She believed that her body was rejecting the sling.

Bergin is a Texas resident, and her ObTape-related treatment took place in Texas. Bergin asserts claims for negligence; strict liability (design defect, manufacturing defect, failure to warn); breach of express warranty; breach of implied warranty; and punitive damages. Bergin argues that Mentor's summary judgment motion should be denied as to her negligence, strict liability, and punitive damages claims. The Court therefore finds that Bergin implicitly conceded that Mentor is entitled to summary judgment on her warranty claims, and the Court grants Mentor's summary judgment motion as to those claims.[1]

**II. Wendy Fudge**

On October 30, 2003, Dr. Brian Feagins implanted Fudge with ObTape to treat her stress urinary incontinence. Within six

---

[1] Even if Bergin had not conceded these claims, Mentor would be entitled to summary judgment for the same reasons it is entitled to summary judgment on her other claims.

months, Fudge began to experience vaginal discharge and odor. Fudge went to see her gynecologist, and she asked if her symptoms could be related to her sling. The gynecologist suggested that Fudge return to Dr. Feagins for follow-up treatment. Fudge visited Dr. Feagins in February 2005 with symptoms of vaginal bleeding and odor. Dr. Feagins examined Fudge and told her that her sling was causing her symptoms and that all or part of the sling needed to be removed. Later that month, Dr. Feagins removed part of Fudge's ObTape. Her symptoms continued, and Dr. Feagins performed three additional revision surgeries. Fudge understood that the revision surgeries were performed to remove portions of her mesh and treat her symptoms. During the last revision surgery, in September 2005, Dr. Feagins removed the remainder of Fudge's ObTape. After that, Fudge reported to Dr. Feagins that her bleeding and discharge symptoms had resolved. Dr. Feagins later recommended a pubovaginal sling for Fudge; he did not recommend another mesh product for Fudge because of the problems she experienced with ObTape.

Fudge is a Texas resident, and her ObTape-related treatment took place in Texas. Fudge asserts claims for negligence; strict liability (design defect, manufacturing defect, failure to warn); breach of implied warranty; breach of express warranty; fraudulent concealment; constructive fraud; negligent misrepresentation; negligent infliction of emotional distress;

gross negligence; unjust enrichment; and punitive damages. Fudge argues that Mentor's summary judgment motion should be denied as to her negligence, strict liability, negligent misrepresentation, and gross negligence claims. The Court therefore finds that Fudge implicitly conceded that Mentor is entitled to summary judgment on her remaining claims, including her warranty, unjust enrichment, negligent infliction of emotional distress, and fraud claims, and the Court grants Mentor's summary judgment motion as to those claims.[2]

DISCUSSION

Bergin filed her action in this Court on May 14, 2013 under the Court's direct filing order. The parties agreed that for direct-filed cases, the "Court will apply the choice of law rules of the state where the plaintiff resides at the time of the filing of the complaint." Order Regarding Direct Filing § II(E), ECF No. 446 in 4:08-md-2004. Bergin is a Texas resident whose ObTape-related treatment took place in Texas, and the parties agree that Texas law applies to her claims.

Fudge filed her action on April 29, 2013 by filing a short form complaint in *In Re: Coloplast Corp. Pelvic Support System Products Liability Litigation*, MDL No.2387. The Judicial Panel on Multidistrict Litigation transferred the action to this Court

---

[2] Even if Fudge had not conceded these claims, Mentor would be entitled to summary judgment for the same reasons it is entitled to summary judgment on her other claims.

for pretrial proceedings. Fudge did not state in her Complaint which U.S. District Court is the proper venue for her action, but she did state that she lives in Texas, and she does not dispute that all of her ObTape-related treatment took place in Texas. The parties agree that Texas law applies because it is the law of the state where venue would be proper had the action not been filed in a multidistrict litigation proceeding.

Plaintiffs both assert personal injury claims against Mentor under a variety of theories. Mentor contends that all of their claims are time-barred. The parties agree that Plaintiffs' claims are subject to a two-year statute of limitations. Tex. Civ. Prac. & Rem. Code § 16.003(a) (requiring that actions for personal injury be brought within two years after the claim accrues). Texas's discovery rule applies if "the nature of the injury incurred is inherently undiscoverable and the evidence of injury is objectively verifiable." *Childs v. Haussecker*, 974 S.W.2d 31, 36 (Tex. 1998) (quoting *Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 918 S.W.2d 453, 456 (Tex. 1994)). Under the discovery rule, "a cause of action does not accrue until a plaintiff knows or, through the exercise of reasonable care and diligence, 'should have known of the wrongful act and resulting injury.'" *Id.* at 37 (quoting *S.V. v. R.V.*, 933 S.W.2d 1, 4 (Tex. 1996)).

Mentor argues that Plaintiffs' claims accrued when Plaintiffs and their doctors linked at least some of their symptoms to ObTape—2006 for Bergin and 2005 for Fudge. Bergin contends that her claims did not accrue until 2011, when she saw an advertisement suggesting that ObTape was defective. And Fudge asserts that her claims did not accrue until 2012, when she learned from a work colleague that ObTape might be defective.

The following cases are instructive. In *Pavich v. Zimmer, Inc.*, 157 F.3d 903 (5th Cir. 1998) (per curiam), the Fifth Circuit found that the Texas discovery rule applied to a plaintiff's claims based on injuries caused by breaks in surgical rods that had been implanted in his spine. *Pavich*, 1998 WL 612290, at *2. According to the Fifth Circuit, the plaintiff "acquired knowledge of facts which, in the exercise of reasonable diligence, would lead to the discovery of his injury" when the plaintiff's doctor told him that his pain was likely caused by breaks in the rods, and that is when his claims accrued. *Id.* at *2 to *3. But the plaintiff did not file his suit until more than two years after his cause of action accrued, so his action was time-barred. *Id.*

In *Porterfield v. Ethicon, Inc.*, 183 F.3d 464, 467 (5th Cir. 1999) (per curiam), the Fifth Circuit concluded that the plaintiff's cause of action accrued under Texas law when she

began to conclude that her symptoms were related to her hernia mesh. The Fifth Circuit rejected the plaintiff's argument that her claims did not accrue until a revision surgery revealed that the mesh had attached itself to her liver. *Id.* Because the plaintiff did not file her action within two years after she began to conclude that her symptoms were related to her hernia mesh, her claims were time-barred. *Id.*

In *Brandau v. Howmedica Osteonics Corp.*, 439 F. App'x 317, 322 (5th Cir. 2011) (per curiam), the Fifth Circuit found that the plaintiff's cause of action accrued under Texas law when her doctor reviewed an x-ray of the plaintiff's knee prosthesis and noticed possible problems with the prosthesis. The plaintiff's action in *Brandau* was timely because the plaintiff filed her action within two years of receiving that provisional diagnosis. *Id.* And in *Woodruff v. A.H. Robins Co.*, 742 F.2d 228 (5th Cir. 1984) (per curiam), Fifth Circuit determined that the plaintiff's cause of action did not accrue under Texas Law until 1981, when she learned of a possible connection between her intrauterine device and her severe pelvic disease. In *Woodruff*, there was no evidence that the plaintiff or her doctors connected the plaintiff's injuries to her intrauterine device before 1981.

Finally, in *Childs*, a case involving plaintiffs who developed silicosis after inhaling silica dust at work, the

Texas Supreme Court explained that "the discovery rule operates to defer accrual of a cause of action until a plaintiff discovers or, through the exercise of reasonable care and diligence, should discover the 'nature of his injury.'" *Childs*, 974 S.W.2d at 40. The *Childs* Court noted that "discovering the 'nature of the injury' requires knowledge of the wrongful act and the resulting injury." *Id.* The *Childs* Court noted that a plaintiff is aware of a "wrongful act" when he discovers "that his injuries resulted from exposure to asbestos," "has knowledge of the cause in fact of her illness," or discovers "an injury and its general cause." *Id.* (citing, for example, *Mann v. A.H. Robins Co.,* 741 F.2d 79 (5th Cir. 1984) (stating that cause of action accrued when plaintiff knew or reasonably should have known of a connection between her intrauterine device and her endometriosis)). In *Childs*, the plaintiffs' causes of action accrued when they discovered (or should have discovered) that their respiratory symptoms were related to their silica exposure at work. *Id.* at 47. The *Childs* Court emphasized that accrual is only tolled "until a claimant discovers or *in the exercise of reasonable diligence should have discovered the injury and that it was likely caused by the wrongful acts of another*." *Id.* (emphasis added). That is because the discovery rule "expressly requires a plaintiff to use reasonable diligence to investigate his injury." *Id.* at 47.

Here, both Plaintiffs knew or should have known that they suffered some injuries related to ObTape by the time of their revision surgeries, and that is when their claims accrued. In 2006, Bergin's doctor told Bergin that portions of her sling had to be removed to treat her symptoms. Bergin cannot seriously dispute that she connected her symptoms to ObTape in 2006; she believed that her symptoms were caused by her body's rejection of the sling. And in 2005, Fudge understood that she had to have several revision surgeries and, ultimately, a complete removal of her mesh to treat her symptoms. Fudge's doctor later declined to recommend another mesh product for Fudge because of the problems she experienced with ObTape. A reasonable person in either situation would take some action to follow up on the cause of her injuries and try to find out whether the injuries were caused by a problem with ObTape, a problem with the implant surgery, or some other problem. Neither Bergin nor Fudge pointed to evidence that they took any action to investigate their potential claims even though they knew there was a connection between ObTape and their injuries. Instead, they argue that even if they should have been aware of a causal connection between their injuries and ObTape in 2005 or 2006, they did not know of any *wrongful* conduct by Mentor until much later.

Plaintiffs latch on to dicta in *Childs* that states that accrual is tolled until the plaintiff discovers that her injury "was likely caused by the *wrongful* acts of another." *Childs*, 974 S.W.2d at 40 (emphasis added). Plaintiffs interpret this language to mean that their claims did not accrue when they learned of a causal connection between the product and their injuries, but when they learned that Mentor's "wrongful act" caused their injury. The Court finds this argument unpersuasive. First, it is not the holding in *Childs.* It is mere dicta. In its holdings, the Texas court clearly indicated that the claims accrued when the plaintiffs learned, or should have learned, that their respiratory symptoms were caused by silica exposure at work. *Childs*, 974 S.W.2d at 46 (finding jury question on when plaintiff Haussecker's claims accrued because of a genuine fact dispute regarding when he knew or should have known of "a likely causal connection between his symptoms and his occupational exposure" to silica); *id.* at 47 (finding jury question on plaintiff Martinez's claims because of a fact question on when he knew or should have known "that his injury was likely work-related"). There is no discussion about the connection between the plaintiffs' silica exposure and any "wrongful acts" by the defendants. It is also noteworthy that the Fifth Circuit in a case decided after *Childs* arising under Texas law makes no mention of a "wrongful act" accrual trigger

in a surgical mesh case. *Porterfield*, 183 F.3d at 467. Rather, the Fifth Circuit in *Porterfield* found that the plaintiff's claim accrued when she became aware that "her physical problems were associated with the mesh." *Id*. Here, Plaintiffs did not point to any holding of a Texas court (and the Court has found none) supporting Plaintiffs' argument that the statute of limitations does not accrue in a personal injury product liability case until a plaintiff has knowledge that the product manufacturer committed a "wrongful act"—even though the plaintiff's injury and a connection to the product were discoverable. The Court refuses to extend the dicta in *Childs* to transform Texas's discovery rule.

For all of these reasons, Bergin's claims accrued in 2006, and Fudge's claims accrued in 2005. Neither filed her action within two years of the accrual. Their claims are time-barred.

CONCLUSION

As discussed above, Mentor's summary judgment motions (ECF No. 40 in 4:13-cv-135 and ECF No. 45 in 4:13-cv-144) are granted.

IT IS SO ORDERED, this 14th day of April, 2016.

s/Clay D. Land

CLAY D. LAND
CHIEF U.S. DISTRICT COURT JUDGE
MIDDLE DISTRICT OF GEORGIA